**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 170.]**

FAIRBORN PROFESSIONAL FIRE FIGHTERS' ASSOCIATION, IAFF LOCAL 1235,
APPELLANT, *v*. CITY OF FAIRBORN, APPELLEE.

[Cite as *Fairborn Professional Fire Fighters' Assn., IAFF Local 1235 v.
Fairborn*, 2000-Ohio-46.]

*Public employees—Collective bargaining—Arbitrator exceeds his powers in
finding for city of Fairborn on performance-appraisal issue, when—R.C.
4117.14(G)(7), applied.*

(No. 99-1469—Submitted April 26, 2000—Decided October 18, 2000.)

APPEAL from the Court of Appeals for Greene County, No. 99-CA-19.

_____

{¶ 1} This case involves the attempt of appellant, Fairborn Professional Fire
Fighters' IAFF Local 1235, to modify or vacate an arbitrator's conciliation award
that resolved a collective bargaining dispute between the union and the appellee,
the city of Fairborn. The union claims that the arbitrator failed to follow the dictates
of R.C. Chapter 4117 in arriving at the award.

{¶ 2} The parties' most recent collective bargaining agreement ("CBA")
was in effect from January 1, 1995 through December 31, 1997. The CBA provided
for mandatory arbitration if the parties could not arrive at a successor contract
eleven days before the expiration of that agreement. The CBA also stated that the
arbitration would be conducted in accordance with the applicable provisions of R.C.
Chapter 4117.

{¶ 3} On December 15, 1997, the parties reached an impasse in negotiations
on several provisions in the new agreement. Pursuant to the CBA, the parties
submitted the disputed issues to arbitration. Each party submitted a prehearing
statement to the arbitrator setting forth its final settlement offer on the unresolved

issues as required by R.C. 4117.14. The arbitrator conducted a hearing on February 23, 1998, and issued an award on March 27, 1998.

{¶ 4} The union filed a motion for modification or vacation of the award in the Greene County Court of Common Pleas, citing two major flaws in the arbitrator's decision. Both involved the city's failure to address disputed issues in its prehearing statement. Since the city failed to properly take positions on those issues, the union argued, the arbitrator erred in finding against the union on those issues.

{¶ 5} The trial court denied the union's motion for modification or vacation of the arbitrator's award. The court of appeals affirmed the trial court's decision.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Jill J. Jay Couch*, for appellant.

*Pickrel, Schaeffer & Ebeling Co., L.P.A., Janet K. Cooper* and *Melissa Green Azallion*, for appellee.

_____

**PFEIFER, J.**

{¶ 7} Under R.C. Chapter 4117, orders in final-offer arbitration are subject to review by the court of common pleas as provided in R.C. Chapter 2711. R.C. 4117.14(G)(8). The union claims that the trial court should have modified or vacated the arbitrator's award pursuant to R.C. 2711.10(D) because the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The union argues that the arbitrator exceeded his powers by not following the mandates of R.C. 4117.14.

{¶ 8} R.C. 4117.14 contains the procedures governing the negotiation of successor collective bargaining agreements for public employees. R.C.

2

4117.14(G)(1) addresses those instances when public employers and public safety employees have reached an impasse in negotiations necessitating the involvement of an arbitrator. The statute requires the parties to "submit to final offer settlement those issues that are subject to collective bargaining * * * and upon which the parties have not reached agreement." R.C. 4117.14(G)(3) requires each party to submit "a written report summarizing the unresolved issues, the party's final offer as to the issues, and the rationale for that position." After a hearing, R.C. 4117.14(G)(7) requires arbitrators to "resolve the dispute between the parties by selecting, on an issue-by-issue basis, from between each of the party's final settlement offers."

{¶ 9} Thus, the statute requires that the parties submit in writing their final offers on disputed bargaining issues and that the arbitrator choose between those two offers in determining a resolution. There is no splitting the baby on specific issues—the arbitrator must choose from one final offer or the other on each issue.

{¶ 10} Since the statute requires each party to submit final offers on each disputed issue, the union argues that the arbitrator erred in finding in favor of the city on issues where the city failed to submit proper offers. The union cites two instances where the city's final-offer statement was deficient as to specific issues: (1) where the city submitted a bundled proposal and (2) where the city submitted no proposal at all. We deal with each of these issues separately.

{¶ 11} First, the union argues that the city bundled several proposals into one proposal, rather than separately delineating each issue upon which the parties had reached impasse. The bundled proposal at issue dealt with the hours of duty in the work week and the scheduling of vacations and holidays. The union argues that the bundled proposal cannot be considered a final offer. The city's bundled proposal was presented in its final offer statement as follows:

"3. Article XXI—Hours of Duty, Work Week, § 21.01; Article XXIV— Vacation, § 24.08; Article XXIX—Holidays, § 29.04.

"Bargaining unit employees currently have six earned days off (EDOs) each year, and thus work an average of 53 hours per week, with a schedule of 24 hours on, and 48 hours off. The City has proposed seven EDOs in 1999 and eight EDOs in 2000, which results in an average work week of 52 hours. This proposal was made contingent upon the Union agreeing to the City's scheduling proposals for EDOs, holidays and vacations. The parties agreed to new language for scheduling of EDOs, holidays and vacations during negotiations, but are at impasse on the number of EDOs granted to bargaining unit employees each year. The Union is proposing 10 EDOs, effective in 1999.

" * * *

"The language in Articles XXIV and XXIX which the parties have agreed to is as follows:

"24.08. Effective January 1, 1999, all vacation leave must be scheduled in advance. Employees must give notice no later than one calendar day prior to the requested vacation usage. However, notice can be given and vacation taken on the same day provided that granting of the request does not result in overtime. Vacation can be taken in no less than two (2) hour increments, and multiples thereof.

"29.04. Effective January 1, 1999, all holidays must be scheduled in advance. Employees must give notice no later than one calendar day prior to the requested holiday usage. However, notice can be given and holidays taken on the same day provided that granting of the request does not result in overtime. Holidays can be taken in no less than twenty-four (24) hour increments. Holidays cannot be taken before they occur."

{¶ 12} The union's final-offer statement featured discrete discussions of the work-week issue, the vacation issue, and the holiday-time issue:

"Issue No. 3, Article XXI—Hours of Duty, Work Week § 21.01. The Union proposes a reduction in the average work week from the current 53 hours per week to 51 hours per week, effective January 1999.

4

" * * *

"Issue No. 6, Article XXIV—Vacation § 24.08. The Union opposes the City's attempt to limit the manner in which bargaining unit members may use negotiated vacation leave time.

" * * *

"Issue No. 7, Article XXIX—Holidays § 29.04. The Union opposes the City's attempt to limit the manner in which bargaining unit members may use their annual holiday time-off."

{¶ 13} We do not agree with the union that all aspects of the final settlement offer must be dealt with in distinct paragraphs. All three issues were distinctly addressed in the city's one paragraph, with the paragraph heading noting all three issues to be discussed therein. R.C. 4117.14 requires only that the parties address each issue that has resulted in impasse. The statute is silent on the structure the final settlement offer must take. Clearly, substance is superior to form in the statute. In this case, the issues the city bundled together had logical relevance to each other but were not inextricably intertwined. The distinct ideas were there, and the arbitrator freely chose from among them. He did not err simply by finding in the city's favor on all of those points.

{¶ 14} The arbitrator did err, however, in finding for the city on an issue it did not include in its final settlement offer. The union addressed the issue of employee performance appraisals as follows:

"Issue No. 12. New Article XLII—Employee Performance Appraisal § 42.01. The Union proposal seeks to delete an unfair, partial, subjective and discriminate [*sic*] evaluation system."

{¶ 15} The city, on the other hand, made no final settlement offer regarding the employee evaluation system. Since R.C. 4117.14(G)(3) requires an arbitrator to choose between two competing proposals, and since the city offered no proposal,

the arbitrator's only option was to find in favor of the union on that issue, if the issue had been a part of collective bargaining, and impasse had been reached.

{¶ 16} While the city argues otherwise, we find that the issue of employee evaluation was a bargaining issue that had reached impasse. The union submitted a proposal regarding the evaluation procedure to the city on February 12, 1998. Also on February 12, 1998, the union wrote to the city, "Should you desire to meet and negotiate the union's Article XLII proposal [regarding performance appraisals], please advise." The city did not respond.

{¶ 17} The city argues that if we find for the union, parties might subvert the bargaining process by submitting wholly new items for the first time as disputed issues in the final-offer statement. We agree that that would contravene the spirit and intent of the collective bargaining Act. However, that is not what happened here. A week before the city filed its final-offer statement, the union sent the city a proposal regarding performance appraisals that was practically identical to the union's final-offer statement on the same issue. This was not a surprise thrown in by the union in its final-offer statement. Still, we warn that arbitration by ambush is not a tactic that either side should employ in collective bargaining, and that the union's one-week gap between proposal and final-offer statement, whether planned or not, is about as close to a surprise attack as we would be comfortable allowing.

{¶ 18} We find that the parties had bargained to impasse on the issue of performance appraisals and that only the union submitted a final settlement offer on that issue. Therefore, pursuant to R.C. 4117.14(G)(7), the arbitrator was powerless to find for the city on that issue. Since the arbitrator therefore exceeded his powers in finding for the city on the performance-appraisal issue, we vacate that portion of the award pursuant to R.C. 2711.10(D).

*Judgment affirmed in part*
*and reversed in part.*

RESNICK and F.E. SWEENEY, JJ., concur.

DOUGLAS, J., concurs in judgment.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in part and dissent in part.

COOK, J., concurs in part and dissents in part.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 19} I concur with the majority's decision to affirm in part. I respectfully dissent, however, from the majority's decision to reverse in part.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 20} I would have dismissed this case as having been improvidently allowed, as I believe that it concerns only factual disputes and clarifies no new legal issue.

{¶ 21} Since the majority chooses to consider the merits, I agree with the majority on the issue of bundling, but dissent from the majority on the issue of late notice. Even the majority concedes that one week is too close for comfort.

{¶ 22} In this case, the performance-appraisal issue was not bargained for or negotiated by the parties in their meetings. It had not been brought up prior to the impasse on December 15, 1997. It was not included in the union's final offer of January 28, 1998.

{¶ 23} The performance-appraisal issue was first presented to the city by letter on February 12, 1998, well after the impasse. The city had precious little time even to discuss this major issue before the deadline for prehearing statements on February 18, 1998. I believe that the city was within its rights to ignore this last-minute inclusion and that the arbitrator had the right to consider this issue not part of the final proposal, a *factual* finding that both the trial court and court of appeals affirmed.

**{¶ 24}** By this opinion, we are indeed permitting "arbitration by ambush." We are allowing an issue never negotiated or discussed until the eleventh hour to be now considered. Worse yet, we are requiring the arbitrator to automatically adopt the union's proposal. This decision can have far-reaching consequences on the process of negotiating for both sides, who can now interject last-minute proposals into what was an orderly and timely process.

**{¶ 25}** At the very least, since we are making findings of fact affecting arbitrability, and are now allowing very late submissions on unnegotiated issues, we should order the parties to submit this matter to arbitration to allow the city an opportunity to respond and to allow consideration of the two proposals on their merits.

**{¶ 26}** For these reasons, I respectfully dissent from the majority's decision to reverse this portion of the judgment.

MOYER, C.J., concurs in the foregoing opinion.

_____