OPINION
{¶ 1} Appellants, the Jefferson County Sheriff's Department and the Jefferson County Commissioners, appeal from the decision of the Jefferson County Common Pleas Court which denied their motion to vacate an arbitration award and instead granted the motion to confirm the arbitration award filed by appellee, the Ohio Patrolman's Benevolent Association ("the Union"). Appellants argue that the conciliator exceeded his powers in various ways and failed to render a final and definite award due to reopener language. Appellants also contend that the conciliator failed to hear pertinent evidence and that the trial court failed to address each count in its judgment entry. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} The Jefferson County Sheriff's Department had a collective bargaining agreement with its safety force that expired September 30, 2003. The Union is the safety force's exclusive representative under the Public Employees' Collective Bargaining Act of Chapter 4117. In negotiating the new contract, the parties successfully bargained on some issues but could not come to an agreement on certain issues such as wages and health insurance. Thus, they sought the assistance of the State Employment Relations Board (SERB) and proceeded through the statutory process set forth in R.C. 4117.14.
 {¶ 3} A fact-finder was appointed, and the timely fact-finding process was extended by agreement of the parties. The fact-finding hearing was held on March 10, 2004, and the fact-finder made its findings on March 22, 2004. Due to the county's rejection of the findings and the prohibition against strikes by police officers, binding conciliation by way of final offer settlement proceedings took place under R.C. 4117.14(G). Both sides submitted their final offers.
 {¶ 4} The final offer settlement proceedings were governed by a conciliator who then held a June 30, 2004 hearing, the recording of which was waived. On July 22, 2004, the conciliator's report was released. In accordance with his duty under R.C. 4117.14(G)(7), the conciliator resolved the dispute between the parties by selecting, on an issue-by-issue basis, from between each of the party's final settlement offers, taking into consideration various factors. Specifically, the conciliator chose the Union's final offers on each issue. The conciliator noted that the parties agreed to the freezing of wages and a reopener after one year. The conciliator held that the final offers concerned two issues: (1) the extent of the reopener regarding wages, and (2) issues regarding health insurance.
 {¶ 5} The Union's final offer adopted by the conciliator on reopener provides:
 {¶ 6} "An economic and health care premium contribution re-opener shall become effective during the period of 12/15/04 through 1/15/05. Should the parties reach impasse in regard to any matter regarding this re-opener then SERB's dispute resolution mechanism shall be invoked. A conciliator as provided in R.C. 4117.14(G)(11) shall have power and authority to rule on wages and other matters with cost implications and shall be entitled to award and/or order increases retroactive to October 1, 2004."
 {¶ 7} The competing language proposed by the Sheriff was as follows:
 {¶ 8} "The parties agree that during the period of December 15, 2004, through January 15, 2005, either party may reopen the agreement for the sole purpose of negotiating modifications to the above referenced hourly rates and the employee's monthly premium contribution towards health care. The party initiating the re-opener shall serve a written notice to the State Employ[ment] Relations Board (SERB) with a certified copy to the other party.
 {¶ 9} "In the event the conciliation process is utilized in accordance with Ohio Revised Code 4117, the conciliator shall have the authority to grant wage increases in the fiscal year in which the conciliator is appointed; however, any wage increase ordered by the conciliator may not be effective earlier than October 1, 2004."
 {¶ 10} The conciliator determined that the Sheriff's proposal to restrict the conciliator's review to wages and premium contributions rather than "wages and other matters with cost implications" was too limiting and that more flexibility was needed to resolve future problems.
 {¶ 11} The Sheriff's final offer on the health insurance issue was as follows:
 {¶ 12} "The employer shall make available to all full-time bargaining unit employees the same major hospitalization care insurance plans that are available to non-bargaining unit Jefferson County employees. If such non-bargaining unit Jefferson County employees are required to pay a portion of the monthly insurance premiums, the same contribution shall also apply to bargaining unit employees through payroll deduction. The monthly insurance premiums in effect at the execution of this agreement shall remain in effect until January 31, 2005. All insurance requirements specified for such non-bargaining unit Jefferson County employees shall also be applicable to bargaining unit employees. The employer will provide the Union advance notice of any modifications to the plan and/or of the individual employee's monthly insurance premium."
 {¶ 13} The conciliator noted that the prior agreement provided for advance notice to the Union of changes in insurance and the opportunity for a meeting. The conciliator also noted that with a pay freeze and continually increasing health insurance costs, the officers are making less each year. Thus, the conciliator adopted the Union's final offer, which provides:
 {¶ 14} "The Employer shall provide hospitalization, medical service coverage, and other health insurance benefits at the benefit level substantially equal to or better than the existing coverage. The employer reserves the right to change coverages or carriers, so long as the new coverage is substantially equal to the existing coverage. Under no circumstances shall the plan provided by the Employer contain costs to the employee in excess of those listed in the schedule of medical benefits set forth as Appendix 1, which is incorporated herein by reference. Nor shall the Employer be permitted to decrease any of the services or benefits set forth in Appendix 1. (Appendix 1 is set forth as Exhibit 2, hereto).
 {¶ 15} "Effective January 1, 2004, the employee's share of healthcare premiums shall be $87 per month for single coverage and $128 per month for family coverage. These amounts shall remain unchanged unless the employer unilaterally reduces the amounts and/or a different amount is negotiated, or ordered pursuant to the parties' 2004 wage and benefit reopener."
 {¶ 16} Final offer settlement awards made under Chapter 4117 are subject to and are reviewable by the trial court as provided in Chapter 2711, related to arbitration awards. R.C.4117.14(G)(8) and (H). Thus, on October 13, 2004, appellants filed a petition in the trial court seeking vacation or modification of the arbitrator's award [hereinafter using arbitrator/arbitration and conciliator/conciliation interchangeably since it is the rules of arbitration that now apply]. The Union answered and filed a petition seeking confirmation of the arbitrator's award. The issues were fully briefed before the trial court. On July 24, 2005, the trial court overruled appellant's motion to vacate and granted the Union's motion to confirm the award. Appellants filed timely notice of appeal.
 APPEALABILITY OF ARBITRATOR'S AWARDS {¶ 17} Once an arbitration award is made, the parties are bound by such decision absent certain statutory exceptions. Pursuant to R.C. 2711.13, a party to the arbitration may file a motion in the court of common pleas for an order vacating the award as prescribed in R.C. 2711.10 or an order modifying or correcting the award as prescribed in R.C. 2711.11. Thus, there are limited occasions on which a trial court can be asked to review the arbitrator's decision. Relevant to this appeal, R.C.2711.10 provides that an award can be vacated only if:
 {¶ 18} "(C) The arbitrators were guilty of misconduct * * * in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 {¶ 19} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 {¶ 20} As can be seen, the trial court's review of an arbitration award is narrow and limited. The courts' jurisdiction to review arbitration awards is restricted by R.C. 2711.01 and R.C. 2711.11. Miller v. Gunckle, 96 Ohio St.3d 359,2003-Ohio-4932, ¶ 10, citing Warren Edn. Assn. v. Warren CityBd. of Edn. (1985), 18 Ohio St.3d 170, 173. The trial court cannot reverse because it disagrees with findings of fact or with an interpretation of a contract. Goodyear Tire Rubber Co. v.Local Union No. 200 (1975), 42 Ohio St.2d 516, 520. The appellate court's standard of review is the same as that of the trial court. Barnesville Exempted Village Sch. Dist. Bd. of Edn.v. Barnesville Assn. of Classified Employees (1997),123 Ohio App.3d 272, 274 (7th Dist.).
 {¶ 21} "Courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Southwest Ohio Reg. Transit Auth. v.Amalgamated Transit Union (2001), 91 Ohio St.3d 108, 110, quoting United Paperworkers Internatl. Union v. Misco, Inc.
(1987), 484 U.S. 29, 373-8. Otherwise, the public policy reasons behind arbitration would be destroyed. Id. at 520. "The whole purpose of arbitration would be undermined if courts had broad authority to vacate an arbitrator's award." Southwest Ohio,91 Ohio St.3d at 109-110, quoting Mahoning Cty. Bd. of MRDD v.Mahoning Cty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 83-84.
 ARGUMENT NUMBER ONE {¶ 22} The labeling and construction of appellants' assignments of error is wholly confusing. Thus, we shall separate the arguments into their specific and basic components. First, appellants argue that the arbitrator's award should be vacated under R.C. 2711.10(C) because the arbitrator exceeded his powers by ordering the Sheriff to provide health benefits at a level substantially equal to existing coverage.
 {¶ 23} Appellants contend that the Sheriff cannot control the content of the county's health insurance plan and that an order to do so would cause the Sheriff to act beyond his authority. They claim that the arbitrator could have ordered the Sheriff to pay for the insurance but had no power to order the Sheriff to ensure that plan content is maintained.
 {¶ 24} Appellants cite R.C. 305.171, which provides in part that the Board of County Commissioners may contract for, purchase, or otherwise procure and pay all or any part of the cost of group insurance policies for county employees from the funds or budgets from which the employees are compensated. R.C.305.171(A). See, also, R.C. 305.171(B).
 {¶ 25} Appellants urge that only the County Commissioners can control the content of the health plan and argue that the Commissioners were not an actual party to the collective bargaining agreement or the conciliation proceedings. Appellants label the Commissioners as non-parties who are not subject to the arbitrator's decision.
 {¶ 26} Appellee responds that the conciliator was required to select one of the parties' final offers regarding the constant changing of health insurance content and premiums. They continue that the conciliator does not exceed his power by choosing the Union's final offer where the Sheriff never objected to the propriety or lawfulness of the Union's offer at fact-finding or at the conciliation hearing. They note the conciliator's finding that the parties consented to procedural matters and waived the making of a record. Appellee claims that besides objecting at a time when the final offer could have been changed, appellants also should have filed a complaint with SERB for unfair labor practices and refused to bargain over this issue. Instead, they engaged in the bargaining process over this issue and thus waived any claim that the conciliator had no power to make an order that matched the Union's final offer.
 {¶ 27} First, we note that a conciliator award that orders the Sheriff's budget to be spent in certain ways does not order the Commissioners to perform an act. Then, we point out that the Commissioners are a specific part of the conciliation process contained in R.C. 4117.14. After the fact-finding panel makes its findings and recommendations, the legislative body has the opportunity to reject the recommendations in order to avoid them being deemed the final resolution. R.C. 4117.14(C)(6)(a). As used in that section, legislative body means the controlling board when the state or any of its agencies, authorities, commissions, boards, or other branch of public employment is party to the fact-finding process. R.C. 4117.14(C)(6)(b). Here, the Board of Commissioners rejected the fact-finding report. Upon rejection and further failure to reach agreement, the final offer settlement procedure is mandatory for public employees who are members of a police department, deputy sheriffs or dispatchers at such establishments. R.C. 4117.14(D)(1).
 {¶ 28} This is the statutorily prescribed process of recourse for all parties. The statutes merely require that the Sheriff represent the interests opposing the Union in the final settlement offer procedure. It should be reiterated here that the main policy reason behind this limited procedure is that these safety forces are not permitted to go on strike as are other government unions.
 {¶ 29} Additionally, the conciliator considers whether the requested award would be contrary to the Sheriff's budget as set forth by the Commissioners. See R.C. 4117.14(G)(7)(c). In other words, the Commissioners set a budget for the departments, and the department must enter conciliation with this budget in mind. How the Sheriff commits or is ordered to expend its allocation is only within its province. Further, the Sheriff and/or the Commissioners claim that the Commissioners were non-parties below, but they then fail to explain or establish how, if that is true, the Commissioners could then become parties to this appeal. In fact, it seems the statute anticipates that the Sheriff as the public employer represented any interests of the Commissioners.
 {¶ 30} Regardless, the Union's final offer accepted by the conciliator did not prohibit the Commissioners from changing coverages or carriers. Requiring that the costs and services remain the same for these employees can be accomplished by theSheriff paying the difference in any deficiencies if the county has dire need to change plans again during the term of the contract. "The issuance of a final offer settlement award constitutes a binding mandate to the public employer and the exclusive representative to take whatever actions are necessary to implement the award." R.C. 4117.14(I). As such, we find that the conciliator did not exceed his power by choosing the Union's final offer.
 {¶ 31} This is especially true where the Sheriff failed to raise before the conciliator the argument regarding the conciliator's power over the content of coverage. Appellants claim that their argument was not waived because it deals with subject matter jurisdiction which can be raised at any time. However, this is not an issue of subject matter jurisdiction. This is a matter of an employer entering a mediation process and agreeing to bargain on the issue of health insurance. When the Union demanded that coverage remain constant, the employer should have objected or refused to bargain on that issue if it believed that it was not a matter subject to conciliation. Instead, the Sheriff only argued over whether the Union's final offer was reasonable and cost-effective.
 {¶ 32} The Sheriff consented to the procedural matters and waived the making of a record; thus, no transcript is available. Still, the scope of the Sheriff's arguments can be seen in the Sheriff's Position Statement on Insurance presented to the conciliator. See Appendix 4 of documents submitted to the trial court with the petition to vacate. By submitting to the statutory process and failing to object to the legality of the Union's final offer on the grounds now raised, the Sheriff waived the right to claim that the issue should not have been subjected to bargaining.
 {¶ 33} "[T]he failure on the part of a party to object to the scope of arbitration constitutes a waiver of the right to contest that issue on appeal." City of Fostoria v. Ohio Patrolman'sBenevolent Assn., 106 Ohio St.3d 194, 2005-Ohio-4558, at ¶ 28. In that case, the trial and appellate courts determined that the arbitrator exceeded his power and made an award on a matter that was not and could not be submitted to him under the collective bargaining agreement. The Supreme Court reversed, holding that the city waived such a holding by failing to inform the arbitrator that he would be exceeding his powers by ruling in favor of two dispatchers who did not file their own grievances. Id. at ¶ 18. The Court concluded that the city implicitly authorized the arbitrator to resolve the case as a class grievance even if he actually had no authority to do so. Id. at ¶ 11. The court noted the principles of induced error. Id. at ¶ 12-14.
 {¶ 34} This court also recently held that the legality of a contract must be raised to the arbitrator in order to preserve the issue for appellate review. Handel's Ent., Inc. v. Wood,
7th Dist. Nos. 04MA238, 05MA70, 2005-Ohio-6922. We stated that submission to arbitration without objection is implicit authorization that the arbitrator has the power to decide the disputed issues. Id. at ¶ 54. See, also, E.S. Gallon Co. v.Deutsch (2001), 142 Ohio App.3d 137, 141-142 (party is estopped from denying arbitrator's authority after submitting to arbitration without objection).
 {¶ 35} Appellants seem to believe that merely because conciliation was statutorily compelled, these principles do not apply to it. However, the relevant principle deals with appellants' act of sitting through the mediation, fact-finding, and conciliation process without ever objecting to the scope of the arbitrator's authority on the particular matter being debated.
 {¶ 36} In applying these principles to the case at bar, we reiterate that the conciliator was required to select, on an issue-by-issue basis, from between each of the party's final settlement offers. R.C. 4117.14(G)(7). The conciliator did not have the power of a typical arbitrator to come to a compromise or a middle ground. Fairborn Prof. Fire Fighters Assn. v. Fairborn
(2000), 90 Ohio St.3d 170, 171-172.
 {¶ 37} In fact, an example of a conciliator exceeding his authority that requires no objection is where the conciliator fashions a compromise between the two competing proposals.McFaul v. UAW Region 2 (1998), 130 Ohio App.3d 111, 1151-16
(where the conciliator exceeded his authority by selecting 4.2% for a wage increase where the competing offers were 3% and 5%). One could not object ahead of time in such case because one would not be aware that such option was possible.
 {¶ 38} However, this is not a case where the Sheriff is unaware of what the arbitrator might try to order. This conciliator's decision arose from a particular process known as final offer settlement proceedings where the Sheriff was clearly on notice of what the Union's final offer contained and thus was explicitly aware of the two options from which the conciliator absolutely had to choose. If one of the two options before the conciliator was beyond his authority to choose, the Sheriff had to raise the issue before the conciliator in order to preserve it for purposes of appeal. As such, this argument is overruled.
 ARGUMENT NUMBER TWO {¶ 39} Appellants' second argument is that the award should be vacated under R.C. 2711.10(D) because it failed to result in a final and definite award upon the subject matter submitted. Specifically, appellants complain that the Union's final offer contains a reopener on health insurance that could result in more arbitration. They contend that this improperly creates an indefinite position that defers resolution of an important matter such as insurance. Yet, they concede that reopener language is a common feature when contracting for wages.
 {¶ 40} Reopener is a common device inserted into collective bargaining agreements in order to effectuate the agreement by settling certain issues at the time, while leaving some of those topics open to renegotiation in the middle of the contract's term due to economic conditions, in this case after a one-year wage freeze is lifted. See e.g., In re Cleveland Sch. Dist. Bd. OfEdn. (Sept. 25, 1997), SERB 97-013. Contrary to appellants' suggestion, reopener can be included in health care clauses in collective bargaining agreements. See, e.g., SERB v. StateOffice of Collective Bargaining (June 11, 1992), 10th Dist. No. 91AP-939. See, also, Dayton v. Fraternal Order of Police
(1991), 76 Ohio St.3d 591, 593-594.
 {¶ 41} A conciliator's award does not lack finality merely because it adopts a party's offer that contains a contractual reopener clause concerning health insurance and notes the use of statutorily-required conciliation in the event of an impasse during reopener negotiations. The matters of wages and health insurance were ruled upon for use in the present contract application. Future use of reopener does not make the decisions on those issues indefinite for their present use.
 {¶ 42} Since the conciliator's award on health insurance was in favor of the Union, one would think the Sheriff would be in favor of reopening on this matter. As appellee points out, appellants' very own final offer called for reopener on hourly rates and on the employee's monthly premium contribution towards health care. Thus, they cannot now complain that somehow, the reopener regarding the health insurance matters, renders the award indefinite and not final. This argument is overruled.
 ARGUMENT NUMBER THREE {¶ 43} Appellant's third argument states that the finality and definiteness problem is further compounded by the following vague and ambiguous language:
 {¶ 44} "Under no circumstances shall the plan provided by the Employer contain costs to the employee in excess of those listed in the schedule of medical benefits set forth in Appendix 1, which is incorporated herein by reference."
 {¶ 45} The Appendix is the current Schedule of Benefits provided to the employees by the employer. Among other things, the schedule lists deductibles and states that the insurer will pay 80% for various services. Appellants argue that the Schedule does not set forth "costs to the employee" as used by the conciliator but merely shows the percentage that will be paid by the insurance carrier.
 {¶ 46} We reject this argument for several reasons. First, the schedule does contain some monetary figures to be paid by the employee such as deductibles and maximum out of pocket coinsurance. Second, a statement of the percentage to be paid by the insurer necessarily establishes the employee's portion as the remainder of costs until 100% is reached. In any event, use of the word "costs" here does not make the award indefinite or lack finality. This argument is overruled.
 ARGUMENT NUMBER FOUR {¶ 47} Appellants' fourth argument is that the award should have been vacated as the arbitrator exceeded his power under R.C.2711.10(C) by violating R.C. 4117.14(G)(11).
 {¶ 48} The Union's final offer adopted by the conciliator allowed for reopener to become effective during the period of December 15, 2004 through January 15, 2005 and then stated that if an impasse was reached:
 {¶ 49} "A conciliator as provided in R.C. 4117.14(G)(11) shall have power and authority to rule on wages and other matters with cost implications and shall be entitled to award and/or order increases retroactive to October 1, 2004."
 {¶ 50} Various guidelines contained in R.C. 4117.14(G) are applicable to final offer settlement proceedings between the public employer and a safety force. Pertinent here, R.C.4117.14(G)(11) provides:
 {¶ 51} "(11) Increases in rates of compensation and other matters with cost implications awarded by the conciliator may be effective only at the start of the fiscal year next commencing after the date of the final offer settlement award; provided that if a new fiscal year has commenced since the issuance of the board order to submit to a final offer settlement procedure, the awarded increases may be retroactive to the commencement of the new fiscal year. The parties may, at any time, amend or modify a conciliator's award or order by mutual agreement."
 {¶ 52} Appellants contend that the arbitrator could not make the reopener proceeding retroactive to October 1, 2004 without violating R.C. 4117.14(G)(11). They explain that a conciliator appointed in 2004 under the reopener could not make an award effective before January 1, 2005, and a conciliator appointed in 2005 under the reopener could not give an award effective before January 1, 2006. They conclude that such retroactivity is only permissive with consent, and they claim none was given.
 {¶ 53} Appellee responds that the Sheriff did consent to retroactivity to October 1, 2004. In particular, the Sheriff's final offer notes the reopener duration and provides in relevant part:
 {¶ 54} "In the event the conciliation process is utilized in accordance with Ohio Revised Code 4117, the conciliator shall have the authority to grant wage increases in the fiscal year in which the conciliator is appointed; however, any wage increase ordered by the conciliator may not be effective earlier than October 1, 2004."
 {¶ 55} Contrary to the Sheriff's appellate arguments, this indeed sets forth a different retroactivity than set forth in R.C. 4117.14(G)(11). Specifically, it allows retroactivity in the fiscal year the conciliator is appointed rather than waiting until the new fiscal year as the statute calls for. Thus, the Sheriff consented to retroactivity at variance from the statute.
 {¶ 56} Still, the Sheriff's final offer does not explicitly consent to exactly what the Union's proposal provides, that is, retroactivity to October 1, 2004 regardless of year of appointment. For instance, the Sheriff's final offer could arguably be read as only permitting retroactivity to October 1, 2004 if the conciliator is appointed that year. However, the Sheriff's language is ambiguous considering the realities of this case and the other contractual components.
 {¶ 57} In response to this contention, we note that appellants' brief assumes the fiscal year begins on January 1. This may be true, but they do not point to evidence of this fact in the record. We cannot take judicial notice that January 1 is the universal starting point for a fiscal year when this court, the State of Ohio, and other entities use July 1 or other dates as the beginning of a fiscal year. Moreover, we cannot determine the commencement date of a fiscal year from the record before this court as the Sheriff waived the making of a record before the conciliator.
 {¶ 58} Additionally, it appears the Sheriff presented no argument below that the Union's offer was illegal under R.C.4117.14(G)(11). See assignment of error number one. With the lack of a transcript, we presume the regularity the proceedings and the validity of the arbitrator's actions, especially considering the following observations.
 {¶ 59} With reopener proceeding from December 15, 2004 through January 14, 2005, there is no way a conciliator could be appointed in 2004. A conciliator is not appointed until a fact-finder is requested, a fact-finding hearing occurs, and a report is issued with time for rejection of such report. Thus, what was the purpose of the portion of the Sheriff's final offer stating that any wage increase ordered by the conciliator may not be effective earlier than October 1, 2004? By expressly adding this to their offer, they acknowledge that date as an available date for retroactivity.
 {¶ 60} Furthermore, the Sheriff proposed a one-year wage freeze effective through September 30, 2004. The Union agreed to this proposal. If the statutory framework for retroactivity was used, then the Union would have actually ended up being subject to a wage freeze until January 1, 2006 (if the Sheriff's fiscal year calculation is correct). Or, if the Sheriff's final offer is used, then the Union would have ended up being subjected to a wage freeze until January 1, 2005. This was not the agreed upon terms of the wage freeze. The wage freeze was to be lifted on October 1, 2004. Much of the conciliation process was built upon the Union's agreement to the Sheriff's wage freeze proposal. Without the retroactivity language in the Union's final offer, the parties' agreement as to the duration of a wage freeze would be a nullity. Thus, the court could find that a wage freeze agreement lasting until September 30, 2004 and made as part of the conciliation process is implied consent for a conciliator appointed upon reopening to have the option of awarding any wage increase retroactive to October 1, 2004, especially considering the language of the Sheriff's offer.
 {¶ 61} Finally, we point to the fact-finder's report, which is part of the record. See Fraternal Order of Police v. ClermontCty. Sheriff (Oct. 26, 1987), 12th Dist. No. CA-87-04-031. See, also, R.C. 4117.14(G)(6). This report states:
 {¶ 62} "The following extension agreement was presented and testimony was provided as to its intent:
 {¶ 63} "EXTENSION AND RETROACTIVITY AGREEMENT
 {¶ 64} "It is hereby agreed by the Jefferson County Sheriff (Employer) that in consideration of the Ohio Patrolmen's Benevolent Association (Union) agreeing to extend the time limits until February 1, 2004 for the parties to initiate the process of fact-finding, including the conducting of a fact-finding hearing in the matter of contract negotiations between the Employer and Union, SERB Case Nos. 03-MED-07-0763, 0764, 0765 and 0766, Employer agrees to waive all limitations on the Conciliator's powers as provided in R.C. 4117.14(G)(11), and agrees that any increases in rates of compensation and other matters with cost implications awarded by the Conciliator may be effective in the 2004 calendar year and thereafter."
 {¶ 65} The agreement is then shown to have been signed by the parties' representatives in October 2003. This agreement was the basis for the Union's offer just prior to their final offer, where they asked for retroactivity until January 1, 2004. The Union amended that offer to October 1, 2004 in recognition of the wage freeze. If that agreement signed in October 2003 and incorporated by the fact-finder does not mean that the Sheriff consented to retroactivity to at least October 1, 2004, then it means nothing at all.
 {¶ 66} For all of the foregoing reasons, the conciliator's choice of the Union's final offer concerning reopening and retroactivity is upheld.
 ARGUMENT NUMBER FIVE {¶ 67} Next, appellants urge that the award should have been vacated under R.C. 2711.10(C) because the arbitrator was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy. Appellants state that their proposal on health insurance had proposed changes in three different sections. Section one was the final offer quoted in our statement of the case supra. This offer was rejected by the conciliator in favor of the Union's competing final offer.
 {¶ 68} The conciliator did not mention sections two or three when noting the Sheriff's position. The Sheriff concludes that a failure to mention these sections must mean that the conciliator violated R.C. 2711.10(C).
 {¶ 69} The conciliator's decision chose the Union's offer regarding changes to section one. The Union did not propose changes to sections two or three. Thus, the Sheriff's offer on those sections would typically be chosen. However, appellee states that the conciliator was informed that the Union accepted the Sheriff's changes to sections two and three. And, appellee still accepts those changes.
 {¶ 70} If agreement was reached, then the conciliator did not need to worry about those sections. Since there is no transcript, this cannot be confirmed. It is appellants, who are arguing the arbitrator failed to consider certain evidence, that have the burden to produce the transcript.
 {¶ 71} Either way, appellee concedes to adoption of the Sheriff's proposed changes to sections two and three. As such, those changes should be adopted and incorporated into the final agreement if they have not already been so incorporated.
 ARGUMENT NUMBER SIX {¶ 72} Appellants' sixth and final argument claims that the trial court erred by failing to address each argument raised in the petition to vacate. Appellants believe they were denied a meaningful review by the trial court's two-page entry which did not specify each "count" listed in the petition. For instance, appellants claim that the court erred by not specifically addressing the effect of R.C. 305.171 or 4117.14(G)(11).
 {¶ 73} First, appellants cite nothing in support of their position that the trial court's entry denying a petition to vacate an arbitrator's award must specify and explicitly make findings on all issues raised. Meaningful review does not require a detailed entry. Rather, the trial court's entry could have been a mere one sentence denial. The relevant statute merely requires: "Upon the granting of an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding, the court must enter judgment in conformity therewith." R.C. 2711.12. See, also, R.C. 2711.09 (for confirming arbitrator's award).
 {¶ 74} In any event, this court undertakes the same legal review as the trial court. Thus, the level of detail in the trial court's entry is of no concern to this court in reviewing the case. This argument is overruled.
 {¶ 75} For all of the foregoing reasons, the judgment of the trial court confirming the conciliator's award is affirmed. And, the order denying appellants' petition to vacate is affirmed.
Donofrio, P.J., concurs.
DeGenaro, J., concurs.