[Cite as *Centofanti. v. Wayne Homes*, 2012-Ohio-4116.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LUDOVICO CENTOFANTI | ) | CASE NO. 10 MA 180 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| WAYNE HOMES | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from the Court of Common
                                Pleas of Mahoning County, Ohio
                                Case No. 08 CV 4572

JUDGMENT:                       Affirmed.  Remanded.

APPEARANCES:

For Plaintiff-Appellee:         Atty. Matthew C. Giannini
                                10404 South Commons Place
                                Suite 200
                                Youngstown, Ohio  44514

For Defendant-Appellant:        Atty. Michael S. Gruber
                                Atty. M. Dean Dahl
                                Zollinger, Gruber, Thomas & Co.
                                P.O. Box 2985
                                6370 Mt. Pleasant Street, N.W.
                                North Canton, Ohio  44720-0985

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                Dated:  September 5, 2012

[Cite as *Centofanti. v. Wayne Homes*, 2012-Ohio-4116.]
WAITE, P.J.

## Summary

{¶1}   In 2007, Appellee Ludovico Centofanti hired Appellant, Wayne Homes, to build a house.  Less than a year later the building was not complete and Appellee informed Appellant that a variety of defects existed in construction.  Appellee also informed Appellant that Appellant's failure to comply with applicable building codes was making financing the remainder of the project difficult.  When the parties could not resolve their differences, Appellee filed a breach of contract suit in the Mahoning County Common Pleas Court.  Within a week of that filing, Appellant initiated a private arbitration proceeding.  Appellant received service of the complaint, but did not respond until February of the following year when Appellant filed a hybrid Civ.R.12(B)(6) motion and motion for stay pending the outcome of arbitration. Appellant and the private arbitration firm exchanged correspondence concerning the arbitration proceeding with Appellee, who consistently and unambiguously informed Appellant and the arbitration firm of his refusal to participate unless ordered to do so by the trial court.  Although Appellee never voluntarily participated in arbitration and the trial court never ordered participation or ruled on the motion for stay, Appellant continued with arbitration unilaterally, receiving an award from the arbitrator which Appellant then submitted to the trial court for enforcement.

{¶2}   Appellee, who had both opposed arbitration and sought, in the alternative, a court-appointed arbitrator rather than a private firm, filed a motion to stay the arbitration decision, an appeal of the decision and a motion for hearing on all pending motions.  A hearing was held on the cross motions, and the magistrate

ordered Appellant to provide additional information identifying the source of the arbitrator's authority to proceed with arbitration in the absence of a court order. At this point, Appellee filed a motion to vacate the arbitration award. The trial court ultimately vacated the award and Appellant filed the instant appeal from that order.

{¶3} An arbitrator's authority to arbitrate, in the absence of a court order, comes from the voluntary participation of the parties. The trial court's decision to vacate the award obtained by Appellant without Appellee's participation was appropriate and was not an abuse of discretion. The judgment of the trial court is affirmed and the matter remanded for further proceedings in accordance with this Court's Opinion.

Factual and Procedural History

{¶4} Appellant, Wayne Homes, L.L.C., was hired by Appellee, Ludovico Centofanti, for the construction of a house. On November 20, 2008, before the completion of construction, Appellee filed a complaint alleging breach of contract, breach of implied warranty to deliver the home free from defect, negligent construction and violations of the Ohio Consumer Sales Practices Act ("CSPA"). Appellee alleged Appellant had failed to perform in a workmanlike manner and provided specific examples, including: improper installation of the footers on the home and garage units, improper installation of post pads, beams and the foundation of the furnace as well as failure to comply with local and state ordinances, regulations, and building codes, resulting in adverse action by Mahoning County which impaired Appellee's ability to maintain financing. Appellee sought release from the construction contract or compensatory damages in the amount of $233,840.00

(the full value of the contract), in addition to treble his actual damages for violations of the CSPA, punitive damages, costs, and attorney fees. Appellee attached a copy of a partially executed construction contract to the complaint.

{¶5} On February 13, 2009 Appellant, then several months in default of filing an answer, filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim and in the alternative, a motion for stay pending resolution by arbitration. Appellant did not attach any evidence that an arbitration agreement existed to this hybrid motion. On February 23, 2009, in response to Appellant's motion for stay, Appellee filed a motion to strike Appellant's February 13, 2009 motion and a counter motion seeking a court appointed arbitrator, citing cost savings as a reason for preferring to use the court's arbitration services, if necessary. Appellee indicated that although a copy of the fully executed contract had been repeatedly requested, no copy had been provided to Appellee by Appellant.

{¶6} On March 6, 2009 Appellant filed a copy of the construction contract with an affidavit in support of the February 13, 2009 motion to dismiss or for a stay pending arbitration. Appellant's copy of the agreement has a second, illegible, signature, dated November 29, 2007, on the space provided for Wayne Homes as contractor. The Wayne Homes representative is not identified. The document was stamped "received by Court Room No. 1" on March 18, 2009.

{¶7} The record is then conspicuously silent until Appellee's May 15, 2009 notice of appeal of arbitration; motion to stay decision; and request for hearing; which was docketed by the court on June 2, 2009. Between the filing of the competing motions in February of 2009 along with the Civ.R. 12(B)(6) motion, and the May 15,

2009 notice by Appellee, the record contains no ruling by the court on any of the pending motions.

**{¶8}** Appellee's May 15, 2009 notice and motion described Appellant's unilateral decision to pursue commercial arbitration absent a court order on the pending motions and Appellee's unambiguous refusal to participate absent a court order. Without Appellee's participation, Appellant obtained an arbitration award. As a result, Appellee asked that the court stay execution of the award and instead schedule a hearing and rule on the outstanding motions as well as his appeal of the arbitration award. On May 20, 2009 Appellant filed an application for an order confirming the arbitration award. Appellant's motion requested confirmation of "a written Award of Arbitrator in the sum of $29,725.00, plus interest at the statutory rate per annum from April 30, 2009, rendered as a result of an arbitration proceeding between Plaintiff and Defendant. Defendant was further awarded $900.00 for reimbursement of arbitration [fees] and expenses." (5/29/09 Application for Order Confirming Arbitration Award.)

**{¶9}** On June 3, 2009 Appellant filed a response opposing Appellee's notice of appeal and motion for stay. Appellant acknowledged that the court never ruled on the pending motions, and that Appellant obtained the arbitration's award without Appellee's participation in the process. Appellant nevertheless asserted the validity of the arbitration decision and maintained that it was Appellee's responsibility to obtain an injunction halting arbitration or asserting that Appellee must abide by the decision even where there was no court order to participate. Appellant refers to a change in the case status in the electronic docket summary as a "February 24, 2009

Order" that "stayed the case pending arbitration." (6/3/09 Defendant Wayne Homes' Response to Plaintiff's Notice of Appeal and Motion to Stay Decision, p. 5.) No such order appears in the record, however, the docket summary information provided by the clerk appears to list the case disposition as "(A) DIVERSION OR ARBITRATION" as of February 24, 2009. (Docket Sheet, p. 1.) Appellee filed a reply to the response and accompanying exhibits on June 5, 2009, detailing consistent communication with both Appellant and various employees of the private arbitration firm concerning the failure of the court to order arbitration and Appellee's consequent refusal to arbitrate. In his reply, Appellee argued that the arbitration award obtained in the absence of one party and without a ruling by the court ordering arbitration was unenforceable. The matter was set for a hearing on June 16, 2009. No transcript or other evidence concerning the hearing was transmitted with the record.

{¶10} A post-hearing magistrate's decision was filed on July 1, 2009. The magistrate found that six days after Appellee filed suit, Appellant had filed a demand for arbitration with the American Arbitration Association ("AAA") and that subsequent motions to dismiss and for stays were filed in the common pleas court but that no motion for stay was decided prior to Appellant's May 20, 2009 motion seeking confirmation of the arbitration award. The magistrate noted that Appellee's May 15, 2009 filing included objections to the arbitration process, but that Appellee had not expressly requested to vacate the award. The magistrate ordered both parties to provide "**legal authority pertaining to the jurisdiction of the AAA to proceed with arbitration of a contractual dispute * * * before a ruling by this Court upon Defendant's motion to dismiss or stay and before a ruling on Plaintiff's motion**

**to strike or request for binding arbitration**" by July 27, 2009, and a second hearing was set.

{¶11} In its court ordered response, filed one day late, Appellant acknowledged that the arbitration provisions governing the proceedings allow motions for stay and motions to compel a party to participate in arbitration. Appellant also recognized that these provisions do not provide for or require that the party opposing arbitration has the burden to file some protective motion to stop arbitration. The magistrate's March 16, 2010 decision denied Appellant's motion to confirm the arbitration award, granted Appellee's motion to vacate the award, and set an April 14, 2010 hearing to determine whether an executed contract between the parties included a binding and enforceable arbitration clause. Appellant filed timely objections to the decision but made no request for findings of fact or conclusions of law. Appellee filed a motion in support of the decision and Appellant, without seeking leave, filed a sur reply.

{¶12} The trial court adopted the magistrate's decision in its entirety. The court denied Appellant's application for an order confirming the arbitration award, and instead vacated the award and taxed costs to Appellant in a judgment entry dated November 2, 2010. Appellant filed a timely notice of appeal of this judgment entry. Interestingly, on November 10, 2010 the magistrate granted Appellant's motion for stay pending arbitration. This November 10, 2010 determination has no bearing on the issues before us, which involves the trial court's decision to vacate the unilateral award.

Argument and Law

ASSIGNMENT OF ERROR

THE TRIAL COURT'S RULING DENYING DEFENDANT'S APPLICATION FOR ORDER CONFIRMING ARBITRATION AWARD AND VACATING THE ARBITRATION AWARD IS ERRONEOUS AS A MATTER OF LAW.

{¶13} The issue before us is the propriety of a trial court's decision to vacate an arbitration award gained without the participation of a party and in the absence of a court order, while the matter was pending in court. The alleged right to arbitrate in lieu of litigation at issue here is based in contract. Because "arbitration is a matter of contract * * * a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration." *Council of Smaller Ents. v. Gates, McDonald & Co.,* 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998) quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Although the arbitrator's authority to decide an issue is created by contract, without a party's voluntary participation the arbitrator has no authority to compel participation. Where a party seeks to enforce a contractual right to arbitrate, the mechanism for enforcement is a court order. R.C. 2711.03. Similarly, although Ohio law gives an arbitrator the power to issue subpoenas, if an individual does not respond to the subpoena, the parties must petition the court for enforcement. R.C. 2711.06.

{¶14} When a claim is brought in court and a party to the suit seeks to end or stay the proceeding by claiming that the matter should instead be submitted to arbitration, "prior to making any determination regarding the arbitrability of any issue raised by the parties' claims, a court must first determine whether the written arbitration agreement being invoked is in fact enforceable under basic contract precepts." *Benjamin v. Pipoly*, 155 Ohio App.3d 171, 2003-Ohio-5666, 800 N.E.2d 50, ¶31. "This determination must begin with application of fundamental principles of state contract law." *Id.* Before transferring jurisdiction over the case to an arbitration panel, "the statute clearly mandates the trial court to decide" several preliminary issues: (1) whether an agreement to arbitrate exists, (1) whether the agreement is enforceable, and (3) whether an enforceable arbitration agreement actually binds the specific parties involved in the suit. *Bradley Dev. Co., Inc. v. Northern Ohio Sewer Contracting, Inc.*, 9th Dist. No. 03CA008249, 2003-Ohio 6123, ¶10.

{¶15} In *Council of Smaller Ents., supra,* the Ohio Supreme Court set forth parameters to determine the arbitrability of a given dispute. We have once before condensed these parameters into a set of guidelines that courts must follow: "(1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit; (2) the question whether a particular claim is arbitrable is one of law for the court to decide; (3) when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and, importantly, (4) when a contract contains an arbitration provision, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not

be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Hoppel v. Feldman*, 7th Dist. No. 09 CO 34, 2011-Ohio-1183, ¶27 citing *Council* at 665-666. Only after review of an existing arbitration agreement between the two parties that covers the subject matter of the dispute may a trial court stay a court proceeding and transfer jurisdiction to arbitration. On the other hand, if the court finds that no valid arbitration agreement exists between the parties, the matter remains with the court. If the court finds a defect in what purports to be an arbitration agreement, the matter remains with the court. Even where the court finds a valid agreement, if that agreement does not cover the subject matter of the dispute, the matter remains with the court.

{¶16} When a party, generally plaintiff, has waived the contractual right to arbitrate by filing suit and the other party seeks to enforce it, the "party seeking to enforce an arbitration provision may choose to move for a stay under R.C. 2711.02, or to petition for an order for the parties to proceed to arbitration under R.C. 2711.03, or to seek orders under both statutes." *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7, ¶18. Revised Code section 2711.02 provides:

> (B) If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the

agreement, provided the applicant for stay is not in default in proceeding with arbitration.

(C) * * * an order under division (B) of this section that grants or denies a stay of a trial of any action pending arbitration, including, but not limited to, an order that is based upon a determination of the court that a party has waived arbitration under the arbitration agreement, is a final order and may be reviewed, affirmed, modified or reversed on appeal.

**{¶17}** Revised Code section 2711.03 provides:

The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition any court of common pleas having jurisdiction of the party so failing to perform for an order directing that the arbitration proceed in the manner provided for in the written agreement. * * * The court shall hear the parties, and, upon being satisfied that the making of the agreement for arbitration or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the agreement.

If the making of the arbitration agreement or the failure to perform it is in issue in a petition filed under division (A) of this section, the court shall proceed summarily to the trial of that issue. * * * [E]ither party * * * may demand a jury trial of that issue.

{¶18} Action under either provision triggers the trial court's duty to "determine ultimately whether an arbitration provision is enforceable (and to be 'satisfied' that the relief sought is appropriate before issuing the order)." *Maestle*, supra at ¶17-18. But the "statutes are separate and distinct provisions and serve different purposes." When a party seeks to enforce an arbitration agreement, action under both provisions may be necessary. Id. at ¶17.

{¶19} As we explained in *Hoppel*: "As a general rule, either party to a contract of arbitration may waive the contractual right to arbitrate. For instance, a plaintiff waives the right to arbitrate by filing a complaint. For the defendant, the right to arbitrate can be preserved by seeking enforcement of the arbitration clause. Failure to move for a stay pursuant to R.C. 2711.02, coupled with responsive pleadings, will constitute a defendant's waiver." (Internal citations omitted). *Hoppel* at ¶44. "R.C. 2711.03 provides that a party cannot actually be compelled to arbitrate in the absence of a court order. Thus, a party who volunteers to submit a claim to arbitration is generally estopped from denying the arbitrator's authority after an adverse award has been issued." *E.S. Gallon Co., L.P.A. v. Deutsch*, 142 Ohio App.3d 137, 141, 754 N.E.2d 291 (2001). Various Ohio courts, including this one, have held that a party who voluntarily submits to arbitration and acknowledges the authority of the arbitrator is estopped from raising lack of authority or lack of jurisdiction at a later date. *Creatore v. Robert W. Baird & Co.,* 154 Ohio App.3d 316, 2003-Ohio-5009, 797 N.E.2d 127, ¶12, also *Jefferson Cty. Sheriff v. Ohio Patrolmen's Benevolent Assn.,* 7th Dist. No. 05 JE 39, 2006-Ohio-1055, ¶34.

{¶20} If a party to an arbitration agreement voluntarily participates in the arbitration of a dispute pursuant to the agreement, or is ordered by the court to participate, he is bound by the arbitrator's decision. By participating voluntarily, or by signing a valid agreement and being compelled to participate, a party limits his ability to modify or avoid the decision of the arbitrator to those grounds provided by statute. A party to a valid arbitration agreement may be bound to accept an arbitrator's decision even when it includes errors of fact or law; the extremely narrow review allowed by law may not provide relief. "It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992). "For our purposes, the converse is also true−if the arbitrator has *not* exceeded his or her powers, the award should not be vacated or modified, absent any of the other circumstances in R.C. 2711.10 and 2711.11 (such as corruption, fraud, misconduct, partiality, or material mistake.)" *Id.* The grounds necessary to vacate an arbitration award are found in the statute:

**2711.10 Court may vacate award.**

In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

The award was procured by corruption, fraud, or undue means.

There was evident partiality or corruption on the part of the arbitrators, or any of them.

The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators.

{¶21} Appellant argues that, despite statutory provisions and caselaw that explicitly identify the mechanisms necessary to enforce a contractual arbitration clause, the burden to enjoin arbitration is on the party who does not wish to arbitrate and is challenging the validity of the arbitration clause. However, both the Ohio legislature and the Supreme Court have clearly placed the burden on Appellant, as the party seeking arbitration, to first obtain enforcement of the clause in a court with jurisdiction over the matter by securing a court order. No requirement or mechanism exists for Appellee to enjoin an arbitration that Appellant commenced after suit was

filed prior to obtaining an order to arbitrate. In fact, Appellee's participation in the arbitration, depending on degree, might operate to waive his objections to arbitration in the trial court. Hence, Appellant has the burdens reversed here. It was not Appellee's duty to stop the arbitration process. Instead, it was Appellant's duty to first obtain a court order to arbitrate before proceeding through the arbitration process.

{¶22} Arbitration is not a substitute for judicial process, nor does the process followed by an arbitrator vindicate a litigant's due process rights. These are functions of government. Arbitration is an extra judicial process: a way, in theory, to avoid the cost and time of litigation. Arbitration clauses cannot be enforced in the absence of some voluntary act by the parties, who presumably made a genuine choice to arbitrate, rather than use the courts, when negotiating their contracts. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 842 N.E.2d 488 (2006). In the absence of voluntary participation by both parties, such a clause cannot be enforced without court action. Just as an arbitrator's power to subpoena witnesses is not equal to a court's power to compel the appearance of parties and the parties must ask the court to enforce the subpoena, where a party seeks to enforce an arbitration clause over the objections of the other party to the agreement, the party seeking to arbitrate must first prove the validity of the clause and seek enforcement in court according to the procedures outlined by the legislature. R.C. 2711.03.

{¶23} Appellant attempts to explain its decision to ignore the judicial proceeding and to coerce Appellee into arbitration by citing to the February 24, 2009 change in the case disposition listed in the docket as the basis for its actions.

Although the disposition may have created some momentary confusion, the efforts of Appellant and the AAA to coerce Appellee into participating in arbitration significantly predate the summary change in the docket. Similarly, the instant lawsuit predates Appellant's arbitration demand. Evidence of efforts to coerce arbitration prior to February 24, 2009 include a December 5, 2008 letter faxed by Appellee's counsel to the AAA, apparently in response to a fax Appellee had received, informing the organization that a lawsuit had been filed and that his client would not participate in the arbitration process. Later the AAA sent a January 13, 2009 letter to both parties, referencing a December 22, 2008 letter sent by Appellant (which does not appear in the record), concerning the pending court case and arbitration proceeding. In the January letter the AAA indicated that in the absence of an agreement by the parties or a court order, arbitration would proceed according to the organization's rules although the parties could renew objections once an arbiter was appointed. The AAA letter also gave the parties a January 20, 2009 deadline to submit a list of possible arbitrators, and informed them that a $1,000.00 fee, to be split between the parties, was due on January 27, 2009. Appellee responded to this letter on January 14, 2009, again stating that he would not participate in arbitration until ordered to do so by the court. He also explained that he had never received an executed copy of the contract containing the alleged arbitration agreement and that the matter was pending in court. By February 6, 2009, despite Appellee's clear refusal to participate, a preliminary hearing was set by the arbitrator for February 13, 2009. All of this occurred prior to any action by the trial court, and prior to any change in the case disposition on the docket.

**{¶24}** The arbitrator's February 13, 2009 letter to AAA indicates that Appellant appeared for the February 13, 2009 teleconference but Appellee did not and that deadlines were set for an exchange of documents in the absence of Appellee. Also on February 13, 2009, Appellant made his first appearance in the lawsuit by filing his motion for stay pending arbitration. The facts presented by Appellant reflect a single-minded focus on arbitration and predated any change in the information reflected in the docket. It continued despite the fact that no order was issued by the court. The case notation in the docket is irrelevant to Appellant's attempts to force Appellee's participation in arbitration. More importantly, because the disposition in the docket is not a court order or judgment of the court, on which Appellant would be genuinely entitled to rely, in the absence of a journalized order or judgment he would have done so to his own detriment.

**{¶25}** "Dockets and journals are distinct records kept by clerks;" a court, however, speaks only through its journal. (Internal citation omitted.) *State ex rel. White v. Junkin*, 80 Ohio St.3d 335, 337 (1997). The common pleas clerk of courts is charged by R.C. 2303.12, to "keep at least four books. They shall be called the appearance docket, trial docket, and printed duplicates of the trial docket * * * journal, and execution docket. * * * He shall keep an index to the trial docket and to the printed duplicates of the trial docket and of the journal direct, and to the appearance docket, record, and execution docket, direct and reverse." The clerk is similarly charged by the Ohio Supreme Court's Superintendence Rules which requires that clerks maintain four separate categories of records: "an index, docket, journal, and case files in accordance with Sup. R. 26(B)." Sup.R. 26.03(B)(1).

**{¶26}** The "case file" under the rule is a "compendium of original documents filed in an action or proceeding in a court, including the pleadings, motions, orders, and judgments of the court" and the "journal" is "a verbatim record of every order or judgment of a court." Sup.R. 26(B).

**{¶27}** The "docket" as it pertains to a common pleas court is prepared and maintained by the clerk and is required to include the "[n]ames and addresses of all parties in full"; "[n]ames, addresses, and Supreme Court attorney registration numbers of all counsel"; "issuance of documents for service upon a party and the return of service or lack of return" as well as a "brief description of all records and orders filed in the proceeding, the time and date filed, and a cross reference to other records as appropriate"; "[a] schedule of court proceedings for the division and its officers to use for case management"; "[a]ll actions taken by the division to enforce orders or judgments; and * * * [a]ny information necessary to document the activity of the clerk of the division regarding the case." Sup.R. 26.03(C).

**{¶28}** As this Court recently explained in *State v. Roepke*, 7th Dist. No. 10 MA 138, 2011-Ohio-6369, the general index and docket created by the clerk is "not the same as a journal." *Id.* at ¶18. While the docket is prepared and maintained by the clerk, the "court speaks through its journals and an entry is effective only when it has been journalized. Civ. R. 58 and Crim. R. 32(B). To journalize a decision means that certain formal requirements have been met, *i.e.*, the decision is reduced to writing, it is signed by a judge, and it is filed with the clerk so that it may become a part of the permanent record of the court." *State v. Ellington*, 36 Ohio App.3d 76, 77-78 (1987).

**{¶29}** Journalization requirements are not empty formalities. Where a court issues a decision verbally or even in writing, but it has not been journalized, the judgment is not final. *State v. Ginocchio*, 38 Ohio App.3d 105, 526 N.E.2d 1366 (1987). Similarly, a court will lose jurisdiction if it fails to journalize its decision within the period prescribed by statute. *Ellington*, paragraph two of the syllabus. A case disposition entered by a clerk that does not reflect a properly journalized order or judgment of the court has no force or effect under Ohio law. Even if the court in this case had ordered arbitration, without a properly journalized record of that order it would be ineffective. The case disposition notation in the docket is not a decision reduced to writing, signed by a judge, and filed with the clerk. Nothing short of a journalized judgment entry alters the fact that the trial court did not order arbitration.

**{¶30}** In essence, because the trial court did not order arbitration, Appellee did not voluntarily participate and no valid arbitration occurred. Without Appellee's voluntary or court-ordered participation the arbitrator exceeded his power and so imperfectly executed his duties that the resulting decision was in no way mutual, and severely prejudiced Appellee. Appellant failed to obtain a court order enforcing the alleged arbitration clause prior to proceeding with arbitration and Appellee refused to participate voluntarily. Hence, the trial court was correct to refuse to enforce the resulting invalid award. Appellant's assignment of error is without merit and is overruled.

## Conclusion

{¶31} The record below supports the trial court's decision to vacate the arbitration award. Appellant's assignment of error is without merit and is overruled. The decision of the trial court is affirmed and the matter remanded to the trial court for further proceedings in compliance with R.C. 2711.02 and .03, and consistent with this Court's Opinion and the Ohio Supreme Court's decision in *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, 800 N.E.2d 7. Costs, including the full cost of the invalid arbitration, are taxed to Appellant.

Donofrio, J., concurs.

DeGenaro, J., concurs.