[Cite as *State v. Walker*, 2018-Ohio-3918.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170321 |
| | | TRIAL NO. B-1604851 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| LORENZO WALKER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 28, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}     Following a jury trial, defendant-appellant Lorenzo Walker was found guilty of two counts of felonious assault with accompanying weapon specifications. He appeals from the trial court's entry convicting him of those offenses and imposing an aggregate sentence of 19 years' imprisonment.

{¶2}     In three assignments of error, Walker argues that the trial court erred in determining that victim Zachary Backus was unavailable and in allowing the state to introduce prior testimony from Backus; that his counsel rendered ineffective assistance by failing to submit a mitigation argument at sentencing; and that the trial court erred by entering sentences that were contrary to law because they were intended to punish him for twice exercising his right to a jury trial.  Finding no merit to his arguments, we affirm the trial court's judgment.

### Factual Background

{¶3}     On May 11, 2016, Backus and Jerdon Louiso were working as "spotters" for a towing company.  Their job was to drive around in search of vehicles that were to be repossessed.  While traveling in Backus's vehicle and looking for a particular car in Springfield Township, Backus and Louiso pulled into the parking lot of an apartment complex to turn around.  Walker approached Backus's vehicle in the parking lot and confronted Backus and Louiso.  He cursed at them, ordered them to leave, and fired multiple shots at Backus's vehicle as it pulled away.  Backus was struck in his back by a ricocheting bullet, and his vehicle suffered significant damage.

{¶4}     Walker was charged with two counts of felonious assault in violation of R.C. 2903.11(A)(2), and accompanying weapon specifications.  In January 2017, his

2

case proceeded to a jury trial, but a mistrial was declared when the jury was unable to reach a verdict. A second jury trial began in May 2017. Backus failed to appear at this second trial, and the state asked the court to declare him unavailable and permit his testimony from the first trial to be read to the jury. Following a hearing, the trial court determined that Backus was unavailable despite a good-faith effort by the state to secure his presence, and it allowed the state to introduce Backus's testimony from the first trial because it had been subject to cross-examination and otherwise met the requirements of Evid.R. 804(B)(1).

{¶5} Walker was found guilty of both counts of felonious assault and the specifications, and was sentenced to an aggregate term of 19 years' imprisonment.

### Evid.R. 804(B)(1) and the Confrontation Clause

{¶6} In his first assignment of error, Walker argues that the trial court erred in allowing the state to use the prior testimony of Backus. He argues that the testimony was not admissible under Evid.R. 804(B)(1), and that the admission of Backus's prior testimony violated the Confrontation Clause.

{¶7} Walker argues that we should review the trial court's admission of Backus's prior testimony for an abuse of discretion. While we typically review a trial court's evidentiary rulings for an abuse of discretion, "we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, citing *United v. Henderson*, 626 F.3d 326, 333 (6th Cir.2010).

{¶8} Under Evid.R. 804(B)(1), former testimony given at another hearing of the same or different proceeding by a witness who is found to be unavailable will not be excluded as hearsay when "the party against whom the testimony is now offered *

3

* * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Pursuant to Evid.R. 804(A)(5), a declarant is considered unavailable when she or he "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means."

{¶9} Testimony is admissible under Evid.R. 804(B)(1) "upon a showing that the witness is unavailable despite reasonable efforts made in good faith to secure his presence at trial." *State v. Keairns*, 9 Ohio St.3d 228, 460 N.E.2d 245 (1984), paragraph two of the syllabus; *see State v. Wright*, 2017-Ohio-1568, 90 N.E.3d 162, ¶ 25 (1st Dist.). The proponent of the declarant's testimony bears the burden of establishing unavailability. *Keairns* at 232; *Wright* at ¶ 25. The unavailability of a witness must be established based on the testimony of witnesses, rather than hearsay not under oath, unless the party against whom the testimony is being offered has conceded the unavailability. *Keairns* at paragraph three of the syllabus; *Wright* at ¶ 25.

{¶10} Here, the record demonstrates that the state issued a subpoena to Backus on March 14, 2017, notifying him that he was required to appear on May 2, 2017, to testify at trial. The Hamilton County Clerk of Court's official appearance docket reflects that the subpoena for Backus had been "returned and endorsed Zachary Backus" that same day; however, our record contains a document that indicates a failure of service on Backus by the Hamilton County Sheriff's Department, noting that Backus was out of county.

{¶11} Backus failed to appear for trial on May 2, 2017. The state then issued another subpoena to be personally served on Backus, stating that his presence was

required the following day, May 3, 2017, to testify in the case against Walker. When Backus failed to appear on May 3, the state asked the trial court to declare Backus unavailable and allow his prior testimony to be read to the jury.

{¶12} As the proponent of Backus's testimony, the state had the burden of establishing his unavailability and reasonable efforts made in good faith to secure his presence. At a hearing, the state presented testimony from three people, including Springfield Township Police Officer Chris Williams, regarding its attempt to secure Backus's presence. Officer Williams testified that he had attempted to serve Backus at his place of residence after Backus failed to appear on May 2, 2017. Backus was not home, but Officer Williams made contact with Backus's brother, who informed him that Backus was on the road with his band. Officer Williams testified that he left a message for Backus, and that Backus returned his call, stating that he was in Atlanta, Georgia with his band. Backus texted Officer Williams a picture of a flyer indicating that his band was playing in Atlanta on May 2, 2017. After leaving Backus's residence, Officer Williams then personally served Jerdon Louiso with a subpoena for the following day.

{¶13} Kelsey Alexander, a victim's advocate with the Hamilton County Prosecutor's Office, testified that she had reached out to Backus on the Sunday prior to the Tuesday that he had been subpoenaed to appear. Alexander summarized the text message that she had sent to Backus as follows: "Hey, I'm just making sure that you know to come to court and that you got your subpoena and that it's a Court order and it's set to go." When Backus failed to respond to Alexander's text, she called him the next day. Backus answered the phone, but hung up after Alexander identified herself. Alexander called Backus again, and left a message with the relevant

information when Backus failed to answer. Alexander testified that texting had previously been the best means of communicating with Backus.

{¶14} The trial court determined that the state had made more than a reasonable, good-faith effort to secure Backus's presence at trial, and declared that Backus was unavailable. The court noted that the clerk of court's docket indicated that on March 14, 2017, a subpoena issued to Backus had been returned and endorsed, although the court stated that it was not sure whether Backus had, in fact, received the subpoena. The court permitted the state to introduce Backus's testimony from the first trial because it had been subject to cross-examination by Walker's counsel, who had the exact same motive to develop the testimony in the prior trial.

{¶15} Walker argues that the state did not make a reasonable, good-faith effort to secure Backus's presence because he claims that the state was aware six weeks before trial that the subpoena issued to Backus had not been served, and it took no additional efforts to find him in order to serve him with a subpoena before trial. We cannot agree. The state issued a subpoena to Backus approximately six weeks prior to the date that he was scheduled to appear in court. Although the record contains a document showing a return on Backus's subpoena which indicates that service had not been obtained, the clerk of court's appearance docket reflects that the subpoena had been "returned and endorsed Zachary Backus" on the date that it was issued. On its face, this indicates that Backus had been successfully served and notified of his need to appear in court on May 2. And the state could have reasonably relied on it in its efforts to procure Backus's attendance by process.

{¶16} Citing to *Keairns*, the dissent asserts that it was not reasonable for the trial court to rely on the appearance docket because a finding of good-faith and reasonable efforts must be based on witness testimony. While *Keairns* requires testimony rather than hearsay not under oath, it does not preclude reliance on other admissible evidence and court records. *Keairns*, 9 Ohio St.3d 228, 460 N.E.2d 245, at paragraph three of the syllabus; *Wright,* 2017-Ohio-1568, 90 N.E.3d 162, at ¶ 25. The concerns raised in *Keairns* with relying on hearsay statements are not implicated when a trial court, to determine good-faith efforts, considers the appearance docket, an official part of the court record that the clerk is mandated to keep. *See* R.C. 2303.12 ("The clerk of the court of common pleas shall keep at least four books. They shall be called the appearance docket, trial docket and printed duplicates of the trial docket for the use of the court and the officers thereof, journal, and execution docket.").

{¶17} The dissent further argues that the trial court erred in relying on the appearance docket because the clerk's notation on the docket was only a brief description of the record, and not the actual record. It cites *Centofanti v. Wayne Homes*, 7th Dist. Mahoning No. 10 MA 180, 2012-Ohio-4116, ¶ 24, for the proposition that "a docket notation by the clerk should not be relied upon because it does not reflect a properly filed court document." The *Centofanti* court reviewed the propriety of a trial court's decision to vacate an arbitration award. In that case, the appellant sought to enforce an arbitration award that he secured while a motion to stay the case was pending and before the court ordered arbitration. The appellant argued that he proceeded with arbitration because he had relied on a notation in an electronic docket summary provided by the clerk, which changed the status of the

case to "stayed pending arbitration." The court explained that a notation of a case disposition in a docket is not a court order or judgment of the court, and that the court speaks only through its journal. *Id.* at ¶ 24-25. In that case, the court never entered an order staying arbitration and no such order was reflected in its journal. Therefore, the appellant could not enforce an arbitration award.

{¶18} *Centofanti* is not relevant to the case at hand. We are not treating the appearance docket as a judgment of the court or relying on it to conclude that Backus had, in fact, been properly served. Rather, because the appearance docket is part of the official record, we find that for purposes of determining whether the state made good-faith efforts to secure his presence "by process or other reasonable means," it was reasonable for the trial court to consider the appearance docket's language that the subpoena issued to Backus had been "returned and endorsed Zachary Backus."

{¶19} In addition to attempting to secure Backus's presence by process, the state took further efforts to secure Backus's presence. Victim's advocate Kelsey Alexander contacted Backus a few days before he was scheduled to appear in court. Backus did not respond to Alexander's text message. When she called him, he hung up. When she called again and left a message, he did not return her telephone call. And when Backus failed to appear for trial on May 2, 2017, the state attempted that same day to personally serve him with another subpoena via Officer Williams.

{¶20} Following our review of the record, we find that the state made a reasonable, good-faith effort to secure Backus's presence at trial via process and other reasonable means. The state issued a subpoena to Backus approximately six weeks prior to trial and the appearance docket indicated that the subpoena had been returned and endorsed by him. It followed up with Backus via a victim's advocate a

few days before trial. And it attempted to personally serve him after he failed to appear on the first day of trial. Nothing in the record demonstrates that the state did not act in good faith in making these efforts. Because Backus's testimony from the first trial came from an adversarial proceeding (a trial on the exact same charges), and was subject to cross-examination by Walker, the trial court did not err in admitting it under Evid.R. 804(B)(1) after determining that Backus was unavailable. *See Wright*, 2017-Ohio-1568, 90 N.E.3d 162, at ¶ 30.

{¶21} We further hold that the admission of Backus's prior testimony did not violate the Confrontation Clause. The Confrontation Clause provides that an accused has the right to confront witnesses against her or him, and it "bars the 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination.' " *State v. Lewis*, 1st Dist. Hamilton Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 29, quoting *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see State v. Ford*, 10th Dist. Franklin No. 07AP-803, 2008-Ohio-4373,¶ 89. Here, we have already determined that the trial court did not err in determining that Backus was unavailable, despite reasonable, good-faith efforts to secure his presence. And Walker had the opportunity to cross-examine Backus when he testified at the first trial. Consequently, the admission of Backus's prior testimony was not in violation of the Confrontation Clause.

{¶22} The first assignment of error is overruled.

*Ineffective Assistance*

{¶23} In his second assignment of error, Walker argues that he received ineffective assistance from his trial counsel when counsel failed to submit a mitigation argument at sentencing.

{¶24} Walker's counsel stated at the sentencing hearing that "I don't want to ruin anything by saying the wrong thing for the appellate record. So I will submit with regard to that."

{¶25} Counsel will not be considered ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 688; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceeding would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142.

{¶26} Generally, the presentation of mitigation argument at a sentencing hearing is a matter of trial strategy that will not support a claim of ineffective assistance. *State v. Tinsley*, 8th Dist. Cuyahoga No. 105551, 2018-Ohio-278, ¶ 17. Walker contends that the utter failure to offer mitigation cannot be considered a valid strategy. We hold that, even if counsel's failure to present a mitigation argument could be considered deficient, Walker has failed to establish a reasonable

probability that the outcome of the proceeding would have been different but for counsel's deficient performance. In imposing maximum consecutive sentences, the trial court considered both Walker's lengthy juvenile record and his prior conviction for manslaughter, and stated that Walker's conduct in this case exhibited a total disregard for human life. The record contains no evidence that the trial court would have imposed a lesser sentence had counsel presented a mitigation argument.

{¶27} Walker's second assignment of error is overruled.

### *Sentencing*

{¶28} In his third assignment of error, Walker argues that the trial court erred by entering sentences that were contrary to law because they were intended to punish him for twice exercising his right to a jury trial, depriving him of due process of law.

{¶29} Prior to imposing sentence, the trial court stated "[h]ere is the deal, Mr. Walker, sir, certainly I appreciate your right to a jury trial. We did that. That's your right and good for you. We tried it twice and, actually, 23 out of 24 jurors said that you were guilty. So we did it again." Walker argues that the trial court's statements expressed its antipathy towards him for twice exercising his right to a jury trial, and that the sentence was punishment for exercising this right.

{¶30} The Ohio Supreme Court recently addressed an allegation of vindictive punishment in *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431. The *Rahab* court held that "[t]here is no question, then, that a sentence vindictively imposed on a defendant for exercising his constitutional right to a jury trial is contrary to law." *Id.* at ¶ 8. But the court declined to apply a presumption of

vindictiveness, and held that a defendant must prove actual vindictiveness by the trial court. *Id.* at ¶ 19.

{¶31} Here, we find no vindictiveness in the trial court's sentence. A review of the entire sentencing hearing convinces us that the court, in its comments, was merely commenting on the fact that Walker had been accorded two trials, and that all but one juror from those trials had believed he was guilty. Walker has failed to demonstrate that the sentences were the product of actual vindictiveness.

{¶32} Because Walker has failed to demonstrate by clear and convincing evidence that the sentences imposed were intended to punish him for exercising his right to a jury trial, we overrule his third assignment of error.

### Conclusion

{¶33} Having overruled Walker's assignments of error, we accordingly affirm the trial court's judgment.

Judgment affirmed.

**CUNNINGHAM, P.J.,** concurs.
**ZAYAS, J.,** dissents.

**ZAYAS, J.,** dissenting.

{¶34} I respectfully dissent from the majority opinion and would find that the trial court erred in concluding that the state made a reasonable good-faith effort to secure the witness's attendance at trial. Accordingly, I would reverse the trial court's judgment and remand the cause for a new trial.

### Standard of Review for Unavailability

{¶35} The Confrontation Clause of the Sixth Amendment to the United States Constitution provides criminal defendants with the right to be confronted with

adverse witnesses. Because of this preference for the testimony of a witness who can be cross-examined and observed by the trier of fact, the Confrontation Clause and Evid.R. 804 require the state to establish a witness's unavailability before the trial court can admit hearsay into evidence. *State v. Keairns*, 9 Ohio St.3d 228, 229-230, 460 N.E.2d 245 (1984).

{¶36} To establish unavailability, the prosecution must show that the witness is unavailable despite the state's good-faith effort to obtain the witness's presence at trial. *Id.* at 230. Whether a good-faith effort has been made is a question of reasonableness. *Id.* at 232. A showing of unavailability must be based upon the testimony of witnesses, under oath, as to the good-faith efforts to secure the witness for trial when, as here, the defendant does not concede unavailability. *Id.* at 250; *State v. Wright*, 2017-Ohio-1568, 90 N.E.3d 162, ¶ 25 (1st Dist.), citing *Keairns* at paragraph three of the syllabus; *State v. Nix*, 1st Dist. Hamilton No. C-030696, 2004-Ohio-5502, ¶ 26-27.

{¶37} Generally, a trial court's decision to admit or exclude evidence will not be disturbed absent an abuse of discretion. *State v. Wolderufael*, 10th Dist. Franklin No. 02AP-1148, 2003-Ohio-3817, ¶ 27. "When the gravamen of the evidentiary question involves a constitutional right or other pure legal question, however, the standard of review is de novo." *State v. Hairston*, 10th Dist. Franklin No. 08AP-735, 2009-Ohio-2346, ¶ 27. *See Wolderufael* at ¶ 27 (explaining that when an evidentiary issue involves a pure legal question, the standard of review is de novo); *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir.2007) (concluding issues of the unavailability of the witness and the reasonableness of the state's efforts to produce the witness are reviewed de novo).

*Unavailability Hearing*

{¶38} The testimony presented by the state established that Alexander knew that Backus played in a band and traveled frequently to perform. Backus had previously told her that texting was the best way to reach him. On Sunday, two days prior to trial, she sent a text message to Backus to confirm that he had received a subpoena and would appear for court. He did not respond to her text.

{¶39} The following day, she called him, and the phone connection sounded like it had dropped. She could hear noises in the background, but Backus did not respond when she said, "Hello." After he hung up, she immediately called him back thinking the connection had dropped, and the call went straight to his voicemail. She left all of the information in a message, and asked him to call her. He did not return the call.

{¶40} Officer Williams testified that he attempted to serve a subpoena on Backus after he failed to appear for trial. His attempt was unsuccessful because Backus was not home. Later that night, Backus called him, and after their conversation, he texted Williams a flyer showing that he was currently performing in Atlanta.

{¶41} The record shows that the prosecutor issued a subpoena for Backus on March 14, 2017, commanding him to appear on May 2, 2017. The subpoena was returned the same day, endorsed by Deputy Bernius, showing that he was unable to serve the subpoena, with an additional remark, "outside of Hamilton County." The return reflects that no sheriff fees or mileage fees were incurred. The prosecution did not discuss this subpoena or offer any sworn testimony regarding this subpoena.

{¶42} The trial court sua sponte reviewed the clerk of court's website and noted the clerk's electronic docket contained a notation on March 14, 2017, that "indicates that a subpoena was sent, returned, and endorsed, Zachary Backus." The court further noted that, "I am not sure if he got it, or whatever, but certainly as part of the state's efforts, they did send out the subpoena ***." The record does not indicate that the trial court reviewed the actual subpoena return that was issued and returned, unserved, on March 14, 2017.

{¶43} I must note that the clerk's website is not part of our record. *See* App.R. 9(A). However, the appearance docket, which is part of the record on appeal, notes that a subpoena was issued to Backus on March 14, 2017. The docket also notes that the subpoena for Backus was "returned and endorsed Zachary Backus" the same day. Nothing in the appearance docket notes that a subpoena was "sent" or "sent out" as the court found. And a review of the filed subpoena return shows that the deputy was unable to serve the subpoena to Backus's address with a remark: "Outside of Hamilton County." No sheriff fees or mileage fees were incurred.

{¶44} The court erred in relying on the docket entry as evidence of the state's good-faith efforts absent any testimony by the state that the clerk's notation factored into its good-faith efforts to locate the witness and absent a return showing that the subpoena had been served. The clerk's notation is a brief description of the record that was filed, and not the actual record that was filed. *See* Sup.R. 26.03(C); *see also Centofanti v. Wayne Homes*, 7th Dist. Mahoning No. 10 MA 180, 2012-Ohio-4116, ¶ 24 (explaining that a docket notation by the clerk should not be relied upon because it does not reflect a properly filed court document). The language in the clerk's

notation does not establish that the subpoena had been served. And, in fact, the return that was endorsed by Bernius indicates that the subpoena was not served.

{¶45} The state presented no testimony regarding the subpoena that was issued and returned unserved on March 14, 2017. The state presented no testimony from a witness from the clerk's office regarding the meaning of its notation. Finally, the state presented no evidence that it had seen the clerk's entry or that the entry impacted its good-faith efforts to secure Backus for trial.

{¶46} Because the state presented no testimony regarding the subpoena or the clerk's notation, the trial court erred in relying on the clerk's notation to conclude that the state sent out a subpoena to Backus on March 14, 2017, as part of its good-faith efforts to secure his presence for trial. *See Keairns*, 9 Ohio St.3d 228, 460 N.E.2d 245, at paragraph three of the syllabus. In reviewing the testimony regarding the state's efforts, the court's erroneous reliance on the clerk's notation led to its conclusion that the state made more than reasonable efforts to secure Backus's testimony.

{¶47} A review of the record establishes that the state did not make a reasonable effort to secure Backus for trial. There is no return of service demonstrating proper service on Backus. The state issued a subpoena on March 14, 2017, but that subpoena was returned unserved the same day. The state did not issue a second subpoena after the first one was returned unserved until after the trial had begun. The state made no efforts to contact or otherwise secure Backus's presence between March 14, 2017, when the subpoena was returned unserved, and April 30, 2017, when Alexander sent a text message to Backus.

{¶48} While the state made multiple efforts to contact Backus after the

subpoena was returned unserved, those subsequent efforts did not begin until two days before the scheduled trial. On a Sunday, the victim's advocate sent him a text message informing him of the trial date. Until that time, the state presented no evidence that Backus had been informed of the trial date. The following day, the advocate again attempted to reach him by calling him and leaving a message. The last attempt to secure his presence occurred after the trial had commenced when a police officer attempted to personally serve him with a subpoena. The state was aware that Backus traveled frequently with his band.

{¶49} This lapse of time in which the state made no effort to contact Backus is not sufficiently reasonable or diligent to secure his presence for trial. *See State v. Workman*, 171 Ohio App.3d 89, 2007-Ohio-1360, 869 N.E.2d 713, ¶ 20, 23 (3d Dist.) (finding that the state's issuance of a subpoena four days before trial that was returned unserved the day of trial because the sheriff's office could not locate the witness did not constitute reasonable efforts); *State v. Reese*, 5th Dist. Richland No. 06CA45, 2007-Ohio-1082 (finding that where the state made no effort to contact the witness until the issuance of a subpoena five days before trial and a subpoena on the day of trial "negates any argument of reasonable diligence."). Because the state failed to demonstrate unavailability, the trial court abused its discretion in admitting the prior testimony of Backus.

{¶50} Having determined that the prior testimony was inadmissible, the remaining issue is whether Walker was prejudiced by its admission. Backus was the state's key witness, and the only witness who could identify Walker as the shooter. Because Backus's testimony provided the only evidence identifying Walker as the perpetrator of the offenses, the inadmissible hearsay prejudiced Walker and violated

his confrontation rights.

{¶51} Accordingly, I would sustain the first assignment of error, reverse the judgment of the trial court, and remand the cause for a new trial. I would hold the remaining assignments of error to be moot.

Please note:

The court has recorded its own entry on the date of the release of this opinion.